14690

DOBSON v. HENRIETTA MILLS

(197 S. E., 313)

*Messrs. Dobson & Dobson,* for appellant, 

*Messrs. Wolfe & Fort,* for respondent, 

May 25, 1938.

The opinion of the Court was delivered by MR. WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE.

This is a "negligence" case, arising out of the collision of two motor vehicles resulting in the death of appellant's intestate.

Upon the close of all of the testimony respondent moved for a directed verdict in its favor. This motion was granted by the presiding Judge. And from judgment entered on this directed verdict the appellant now appeals to this Court.

The motion for a directed verdict was made on the grounds that "the testimony as a whole admits of but one reasonable inference, to-wit: That the accident was the proximate result of the negligence of the deceased Mrs. Jennie Stevens McGee in driving the Ford automobile at the time of the collision with the truck."

The issue before this Court, therefore, requires an examination and analysis of the pleadings and of the testimony.

The pertinent portions of the complaint are as follows:

"4. That on or about Oct. 15, 1936, while Jennie Stevens McGee was riding in a Ford automobile along the National Highway leading from Blacksburg to Gaffney and while travelling in the direction of Gaffney, at a point about three miles South of the City of Blacksburg in this State and County, and while the Ford automobile was attempting to pass the Chevrolet truck hereinabove described, which said truck was travelling in the same direction as the automobile in which Plaintiff was riding, the Chevrolet truck herein was suddenly, carelessly, negligently, recklessly and wantonly turned directly to the left across the said highway and into and against the side of the said Ford automobile, causing it to turn over and Mrs. Jennie Stevens McGee to be violently thrown therefrom. * * *

"5. That the said damages were directly due to and proximately caused by the carelessness, negligence, recklessness, willfulness and wantonness of the defendant, its agent and servant in the following particulars, to-wit:

"(a) In causing the Chevrolet truck to be driven suddenly and without warning to its left across the said highway and into and against the Ford automobile.

"(b) In failing to have the Chevrolet Truck equipped with rear view mirror or mirrors.

* * * * *

"(e) In failing to give a proper signal to the said Mrs. Jennie Stevens McGee * * * before turning the said Chevrolet truck to the left across the highway.

"(f) In failing to observe due care and to keep a proper look-out along the said highway so as to prevent running into and injuring Jennie Stevens McGee.

"(g) In driving the said Chevrolet truck to the left of the said highway and into and against the said Jennie Stevens McGee after the driver of the said truck knew, or with the

use of reasonable diligence would have known, that the said Ford automobile was attempting to and was in the act of passing the said Chevrolet truck to its left along the highway."

Respondent, in its answer, entered first a general denial. And as an affirmative defense it also alleged contributory negligence and gross negligence in the operation of the Ford automobile in that said automobile at the time of the collision was being driven in a grossly negligent, reckless and wanton manner in the particulars, to wit:

"(a) In driving said automobile at an excessive and unlawful rate of speed in view of the circumstances then existing, and traffic conditions on said highway.

"(b) In failure to keep to her right on said highway.

"(c) In her failure to have observed highway warnings and to keep a look-out ahead.

"(d) In her failure to observe that defendant's truck had slowed up to make a turn on said highway at the intersection of the Cherokee Falls road.

"(e) In cutting suddenly and at a high rate of speed to her left of the highway and in attempting to pass defendant's truck at the intersection of said Cherokee Falls road, notwithstanding defendant's truck had made a partial turn to enter said road.

"(f) In failing to give the driver of defendant's truck any warning or signal of her horn on said automobile or otherwise that she intended to so pass the truck."

So much for the pleadings. We shall proceed now to consider the proof. And for the sake of clarity we shall term the appellant the "plaintiff", and the respondent the "defendant".

It appears from the record that the highway, leading up to the scene of this unfortunate occurrence, was, for a considerable distance, perfectly straight. The paved portion of the highway was twenty feet wide and there was a painted traffic line running down its center. There were shoulders on both sides of the paved portion.

Entering this highway at right angles was a dirt road leading to Cherokee Falls; the entrance to this Cherokee Falls road being concealed from the view of the traveler on the paved highway by a bank of earth.

On the day in question the truck of defendant, transporting two barrels of fish and oysters, was being driven by one of its agents from Blacksburg over the paved highway—the destination of the truck being Cherokee Falls. Some distance behind the truck, and proceeding in the same direction along the paved highway, was a Ford automobile in which plaintiff's intestate, Mrs. Jennie Stevens McGee, was riding. She was a resident of the State of Louisiana, and with a companion, Mrs. W. G. Strange, also from Louisiana, was riding in the automobile on a pleasure trip. As these two motor vehicles—the truck of defendant in front, and the Ford automobile of plaintiff's intestate following it at some distance behind—proceeded along this paved highway from Blacksburg in the direction toward Gaffney, the entrance to the Cherokee Falls road, concealed from the view of travelers on the paved highway by the earthen bank as aforesaid, was on the lefthand side of the road. At a point on the paved highway approximately 100 yards before reaching the entrance of the Cherokee Falls road there had been placed by the highway department a sign warning of the entrance into the highway of this side road.

The contact between the two motor vehicles occurred when the driver of defendant's truck was engaged in turning to his left in order to enter the Cherokee Falls road, and the driver of the Ford automobile at the same time undertook to pass by the left side of the truck in the direction of Gaffney. The left front wheel of the truck came into contact with the right rear fender or wheel of the automobile. The automobile was overturned, resulting in the death of plaintiff's intestate.

The events leading up to the contact of the two motor vehicles were as follows:

The record shows that the truck was not equipped with a rear view mirror as required by the terms of Act No. 941 of the 1936 Statutes, p. 1712, vol. 39. This Act provides that "it shall be unlawful to operate upon any of the highways of this State any motor vehicle designed particularly for transportation of property, unless the same be provided with a mirror so fixed in front of and to the left of the seat of the operator as to enable him to observe the road and traffic in the immediate rear of his vehicle." It appears, however, that the driver of the truck knew that the Ford automobile was following him on the highway. He testified that when he was at a point about 150 feet from the entrance to the Cherokee Falls road he looked back and saw the Ford automobile which was then about a city block and a half behind him; that when he was 25 or 30 feet from the intersection he again looked back, he being then on the right side of the paved highway; that he then threw out his hand, and started bearing to the left. He testified that while on the highway he had been traveling 25 or 35 miles per hour, but that before commencing to enter the intersection he slowed his speed to 5 or 10 miles per hour.

The distance which the truck had proceeded in the left turn before the contact between the two motor vehicles is disputed. The driver of the truck testified that he had reached a point about a foot from being off the paving on the left side of the highway. A highway department patrolman testified that there was a tire skid mark on the paving at a point about two and a half feet to the left of the center traffic line on the highway; and it was his opinion that this was the point of contact. The county engineer testified as to the skid mark and gave the same opinion. A mechanic who arrived at the scene after the accident testified from what he observed there, that his opinion was that the contact took place at a point three feet from the edge of the paving.

As to the operation of the Ford automobile in the enterprise of passing the truck the record shows a difference of opinion as to its speed. An eye witness testified that it was

going at a speed of from 40 to 45 miles per hour. Some witnesses thought the speed was higher. After the contact the Ford turned over three times. There was a difference of opinion as to whether the Ford could have passed around the right side of the truck. And as to whether any signal was given by the Ford automobile of the intention to pass the truck, both the driver of the truck and another man riding with him on the truck testified that there was no such signal.

Now as to the rules of law applying to the issue made by this appeal.

Is it possible to reach more than one *reasonable inference* from the testimony?

In arriving at the proper solution of this question we must keep in mind the rule as stated by this Court in the case of *Nalley v. Insurance Co.,* 178 S. C., 183, 182 S. E., 301, 304, as follows: "It must be remembered in a review of a judicial ruling granting a motion for a directed verdict that the question does not involve a determination of the weight of the evidence, but only whether there is any admissible and relevant testimony of substantial probative value tending to establish the essential elements of the complaint; and in determining this question it is elementary that the testimony must be considered most favorably to the party against whom the verdict is directed."

The common-law rules of the road required the operator of defendant's truck to use the highway with a due regard of a like use of the highway by others. It required him to exercise due care: That degree of care which would have been exercised by a person of ordinary care, prudence and judgment, operating the same truck at the same time and place and under the same circumstances as those under investigation. Would such a person have turned the truck to the left on the highway at the time at which it was turned? Or would such a person, before commencing the left turn, have either made certain that the

following automobile was not going to attempt to pass the truck, or else let it pass if the intention was to pass?

■ It is our opinion that on this question there may be reached more than one reasonable inference.

■ The statutory rules of the road required the truck to be equipped with a rear view mirror. 1936 Statutes No. 941. The defendant's truck was not so equipped.

The violation of this statute constituted simple negligence *per se,* and was some evidence to be considered on the issue of gross negligence.

■ May there be reached a reasonable inference that the absence of the rear view mirror was a proximate, a direct and immediate cause of the collision? Granted that the truck was moving slowly; that the truck driver knew that an automobile was following him at some distance behind; that there was a highway sign warning of the existence of the side road; that he had thrown out his hand as a sign of his intention to turn to the left; would or would not the presence of the rear view mirror have notified him of the intention and attempt of the automobile to pass him, so that he might have brought the truck to a stop?

It is our opinion that on this question there may be reached more than one reasonable inference.

Now as to the defense of contributory negligence.

■ The common-law rules of the road also required the driver of the Ford automobile to use the highway with a due regard for a like use of the highway by others. She was also required to exercise due care—that same degree of care which would have been exercised under the same circumstances and same conditions of traffic by a person of ordinary care, judgment and prudence. She was required to have her automobile under that same degree of control, to operate it at the same speed, to give the same signals, to take the same notice of highway signs and warnings, as would have been exercised by a person of ordinary care, judgment and prudence, engaged in operating the same

automobile at the same time and place and under the circumstances under investigation.

It is our opinion that on this question there may be reached more than one reasonable inference. We cannot hold that on this record, as a matter of law, that the driver of the automobile was guilty of contributory negligence.

It is therefore the order of this Court that the judgment on the directed verdict be set aside, and this cause remanded for a new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.