17422

William GREEN, Respondent, v. Furman BONEY, Appellant
(103 S. E. (2d) 732)

50

*Messrs. Edens & Woodward,* of Columbia, *for Appellant,*

*Messrs. John A. Martin* and *T. K. McDonald,* of Winns-
boro, *for Respondent,*

May 13, 1958.

OXNER, Justice.

This action was brought to recover damages for personal injuries sustained by plaintiff as a result of an automobile collision. Defendant denied all acts of negligence and recklessness alleged in the complaint, set up a plea of contributory negligence and willfullness, and by way of counterclaim sought to recover damages for personal injuries sustained by him. The trial resulted in a verdict for plaintiff for $12,500.00 actual damages and $2,000.00 punitive damages. This appeal by defendant followed.

There are numerous questions raised by the exceptions. We shall first consider whether the Court erred in refusing a motion for a directed verdict made by defendant upon the grounds (1) that there was no evidence of any actionable negligence on his part, and (2) that the plaintiff was guilty of contributory negligence and willfullness as a matter of law.

The collision occurred between 1:00 and 2:00 p. m., on Monday, December 26, 1955 at a point on U. S. Highway No. 21, about one-half mile south of the town of Ridgeway, Fairfield County. Plaintiff, a Negro about 50 years of age who lived at Ridgeway, accompanied by a friend, Otis Buggs, was driving a 1952 Chevrolet car in a southerly direction and defendant, a white man in his late twenties who also resided at Ridgeway, accompanied by a friend, Robert Morgan, was driving a 1956 Ford automobile in a northerly direction. Although there is some testimony to the contrary, the overwhelming weight of the evidence is to the effect that the collision occurred while plaintiff was

seeking to make a left turn for the purpose of going to a combination grocery store and service station located on the east side of the highway. The front of defendant's car struck the right front side of plaintiff's car. The point of impact was approximately four feet from the center of the highway in the northbound lane. There were skidmarks in defendant's lane extending for a distance of 175 feet to the point of impact. The Chevrolet was knocked back 25 feet at an angle. The Ford came to rest about 16 feet from the point of impact. Both cars were extensively damaged. Buggs died almost instantly. Plaintiff and defendant, both of whom were seriously injured, were taken in an ambulance to a hospital in Columbia.

The accident occurred on a clear day. The pavement of the highway was 24 feet wide with five foot shoulders. In approaching the place of collision, defendant climbed a 5% grade and after reaching the crest of this hill, the road was approximately level to the point of impact—a distance of two or three hundred feet. A surveyor testified that as plaintiff approached the place of collision, any oncoming traffic would have been visible for a distance of about 500 feet. At the point where plaintiff made a left turn, there was a yellow "nonpassing" line on his side of the road.

Plaintiff testified that he was traveling in a southerly direction on this highway at a speed of about 25 miles an hour; that it was necessary for him to make a left turn to go to a grocery store to buy some items for his wife who was ill; that before undertaking to do so, he looked in both directions and there were no cars in sight; that he then extended his hand for a left turn; and that about the time he had made the turn, he saw a car come over the crest of the hill and "before you could bat your eye he was in to me."

One of plaintiff's witnesses stated that while standing in the door of a store located about a quarter or half-mile from the place of the accident, he saw the defendant pass driving between 70 and 90 miles per hour. Morgan, who

was riding in the car with the defendant, testified that when about a quarter of a mile from the place of the accident, he looked at the speedometer which registered a speed of 90 or 95 miles an hour and that he asked defendant to slow down, which he was doing when the accident occurred. Defendant sought to impeach the testimony of these two witnesses by showing that they gave somewhat contradictory statements at the Coroner's inquest.

Defendant testified that due to his injuries he did not recall the collision and that the last thing he remembered was turning around in the highway at a point about a mile south of the place of the accident. He admitted, however, that his "ordinary speed was somewhere in the neighborhood of 65 to 70 miles an hour." One of his witnesses, who claimed to have seen the collision, testified that when the defendant was within 20 or 25 feet of plaintiff, the latter, without giving any signal, made an abrupt left turn in front of the defendant's car. Morgan who, as above stated, was riding with defendant, testified to the same effect. There is some suggestion that plaintiff was drinking but the overwhelming weight of the evidence is to the contrary.

Defendant claims that plaintiff's version of the accident is "inherently incredible" and that the testimony conclusively shows that plaintiff made a sudden left turn just before the two cars met, after which he (defendant) applied his brakes and did everything reasonably possible to avoid the accident. He says that his speed, even if excessive, could have had no causal connection with the accident. It is strenuously argued that the plaintiff negligently and recklessly crossed a non-passing yellow line made by the Highway Department and drove in the defendant's lane of traffic when it should have been obvious to him that he could not do so with reasonable safety.

Section 46-388 of the 1952 Code provides that no vehicle shall at any time be driven to the left side of the roadway "when approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed

within such distance as to create a hazard in the event another vehicle might approach from the opposite direction."

46-389 is as follows: "The Department may determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous and may by appropriate signs or markings on the roadway indicate the beginning and end of such zones and when such signs or markings are in place and clearly visible to an ordinarily observant person every driver of a vehicle shall obey the directions thereof."

Section 46-405 provides that no person shall "turn a vehicle to enter a private road or roadway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."

Apart from statutes, the courts generally recognize the danger frequently present in undertaking to make a left turn between intersections in order to enter a private driveway. Blashfield, Cyc. Automobile Law and Practice, Permanent Edition, Volume 2, Section 1170. An excellent review of cases involving left turns between intersections will be found in *Fisher v. Reilly*, 207 Or. 7, 294 P. (2d) 615, 623. As there pointed out, while many courts hold that drivers making such turns must exercise "extraordinary precautions", "maintain due care", a "high degree of care" and the like, the test after all is "what would an ordinarily prudent person have done under the same circumstances." Reasonable care means care commensurate with the apparent danger.

The phrase "with reasonable safety" in Section 46-405 does not mean that a left turn into a private driveway can only be made when it can be done free from all possibility of danger, or that the party making such turn must be certain of absolute safety before he turns. *Virgina Electric & Power Co. v. Holland,* 184 Va. 893, 37 S. E. (2d) 40; *Cooley v. Baker,* 231 N. C. 533, 58 S. E.

(2d) 115; *Washam v. Peerless Automatic Staple Machine Co.,* 45 Cal. App. (2d) 174, 113 P. (2d) 724; *Young v. Blue Line Storage Co.,* 242 Iowa 125, 44 N. W. (2d) 391; Blashfield, *supra,* Volume 2, Section 1121.

In *Washam v. Peerless Automatic Staple Machine Co., supra,* [45 Cal. App. (2d) 174, 113 P. (2d) 727] the Court said:

"It will be observed from the language of Section 544 that a left-hand turn on a public highway shall be made only when it can be done with reasonable safety. No definite distance from the turning vehicle is prescribed for the moving object which might interfere with safety. From the language of that section, it is to be concluded that the driver making the left turn must exercise that degree of care that should be exercised by a person of reasonable caution and prudence under the same circumstances. Whether the party making the turn exercised such reasonable care was a fact to be determined by the trial court from all of the evidence in the case. If this were not so, the legislature would have prescribed a definite distance in yards or meters that a moving object must be from the turning vehicle before it could proceed to make a left turn."

In *Cooley v. Baker, supra* [231 N. C. 533, 58 S. E. (2d) 117], the Court stated:

"The statutory provision that 'the driver of any vehicle upon a highway before * * * turning from a direct line shall first see that such movement can be made in safety' does not mean that a motorist may not make a left turn on a highway unless the circumstances render such turning absolutely free from danger. It is simply designed to impose upon the driver of a motor vehicle, who is about to make a left turn upon a highway, the legal duty to exercise reasonable care under the circumstances in ascertaining that such movement can be made with safety to himself and others before he actually undertakes it. * * * In considering whether he can turn with safety * * *, the driver of a motor vehicle, who undertakes to make a left turn in front

of an approaching motorist, has the right to take it for granted in the absence of notice to the contrary that the oncoming motorist will maintain a proper lookout, drive at a lawful speed, and otherwise exercise due care to avoid collision with the turning vehicle."

It is not always an act of negligence for a motorist to make a left turn across a yellow barrier line for the purpose of entering a private driveway. In *Wilburn v. Simons,* 302 Ky. 752, 196 S. W. (2d) 356, 359, the Court held that a motorist was not negligent as a matter of law in making such a turn in front of the crest of a hill for the purpose of entering the driveway of his home. It was there said:

"Our attention has also been directed to Instruction III telling the jury, in sum and substance, that Wilburn was guilty of negligence as a matter of law because he drove his car to his left side of the highway at the place of accident, such place being located just in front of the crest of a hill where a yellow barrier line had been painted and where a highway sign had been erected warning Wilburn and others to keep within the westbound lane at that location. It is good basic common sense to assume and declare that Wilburn had a full and perfect right to enter his own driveway, * * * regardless of the clear necessity of crossing to the left of a yellow barrier line in order to make that entrance. Of course, Wilburn may have driven negligently in getting into his driveway. But the question of whether he did or did not was one for the jury's decision. He had to drive to the left of the center line and barrier line to get to his own driveway."

Considering the evidence in the light of the foregoing legal principles, we think the motion for a directed verdict was properly refused. The evidence clearly warrants an inference of actionable negligence and recklessness on the part of the defendant. The question of contributory negligence and reckless on the part of the plaintiff is more difficult, but after careful consideration we think

this issue was also properly submitted to the jury. We cannot say as a matter of law that plaintiff was negligent in making a left turn at the place in question. Any oncoming traffic could have been seen for a distance of around 500 feet. Plaintiff testified, which we must assume as true in passing on the motion for directed verdict, that before undertaking to make this left turn, he carefully looked in both directions and there were no cars in sight. In view of the testimony that defendant's car skidded a distance of 175 feet before the collision, the jury was fully warranted in rejecting defendant's contention that when the two vehicles were only 20 or 25 feet apart, plaintiff abruptly made a left turn in front of his car.

The foregoing conclusion is fully sustained by the decisions of this Court. *Dobson v. Henrietta Mills,* 187 S. C. 281, 197 S. E. 313; *Bedford v. Armory Wholesale Grocery Co.,* 195 S. C. 150, 10 S. E. (2d) 330; *Anderson v. Davis,* 229 S. C. 223, 92 S. E. (2d) 469. In *Bedford v. Armory Wholesale Grocery Co., supra,* it was held that it was for the jury to determine whether a plaintiff was negligent in undertaking to cross the highway when he saw a truck approaching approximately 700 feet distant. In *Anderson v. Davis, supra,* the Court held that although the plaintiff may have been guilty of negligence in undertaking to make a left turn into a driveway when through the rear view mirror she saw defendants' car at a distance of about 135 feet behind her in the same lane, the jury could infer that the accident was proximately caused by the gross negligence and recklessness of defendants in driving at an excessive rate of speed, preventing the driver of defendants' car from stopping in time to avoid the collision, and that the contributory negligence of the plaintiff would not constitute a defense to gross negligence and recklessness on the part of the defendants. So in the instant case the jury could have inferred that the defendant was guilty of recklessness in driving at an excessive rate of speed but that the plaintiff was no more than negligent in making a left turn at the place in question.

We now turn to the other exceptions.

It is claimed that the trial Judge made an improper comment during the cross-examination of the witness Talmadge Watts. This witness testified on direct examination that while standing in the door of Bass' Store, located on Highway 21 about a fourth or half mile south of the place of the accident, he saw defendant pass driving between 75 and 90 miles an hour. On cross-examination, defendant's counsel sought to discredit this testimony by showing that Watts testified differently at the coroner's inquest. During the course of this cross-examination, the following occurred:

"Q. So therefore according to your sworn statement back there at that time it took Boney 15 minutes to go from Bass' Store to the place of the accident, didn't it?

"A. The Court: No, he didn't say that."

The record discloses no complaint at that time by defendant's counsel. There was no motion for a mistrial. The Court permitted defendant's counsel to read into the record the entire testimony given by this witness at the coroner's inquest.

The statement of the Court was technically correct. This witness testified at one point at the coroner's inquest that he arrived at the scene about fifteen minutes after the collision occurred and at another point said he saw the defendant "fifteen minutes before he hit". But we do not find where he ever specifically estimated the time required for the defendant to travel from Bass' Store to the place of accident. A reading of the entire testimony of this witness clearly shows that he meant that after seeing the defendant pass, he caught a ride and arrived at the scene in about fifteen minutes. Be that as it may, however, the incident complained of could not have been prejudicial.

Error is assigned in permitting the plaintiff to walk before the jury to show a limp. His physician testified that among other injuries, he sustained a fracture of the right femur and had a permanent disability in this leg of

25% to 35%. He further said that plaintiff had "some degree of limp" which would later improve. During the examination of this physician, plaintiff's counsel requested that his client be permitted to walk before the jury so as to obtain this physician's opinion as to whether plaintiff's injury caused the limp in his walk. Upon objection by defendant, the trial Judge ruled that he would not permit such a demonstration until the plaintiff had been sworn. Later when the plaintiff was testifying, the Court allowed him to walk in the court room before the jury. We find no abuse of discretion in permitting this demonstration. *O'Keefe v. Ripp*, 110 N. J. L. 555, 166 A. 197; 20 Am. Jur., Evidence, Section 724; Annotation, 103 A. L. R. 1355.

It is contended that the Court erred in admitting defendant's plea of guilty of involuntary manslaughter to an indictment charging him and plaintiff with the murder of Buggs. (No trial has been had on the indictment against plaintiff). This constituted an admission of at least negligence in the operation of defendant's automobile and was clearly admissible. *Globe & Rutgers Fire Insurance Co. v. Foil*, 189 S. C. 91, 200 S. E. 97; 20 Am. Jur., Evidence, Section 648; Annotation, 18 A. L. R. (2d) 1287. Defendant was given a full opportunity to explain this plea. Counsel for defendant state that it was only an admission that defendant and plaintiff by their joint negligence injured Buggs and argue that the general rule does not apply where there is a joint indictment. We find no basis for the claimed distinction. In order to render a defendant criminally liable, it is not necessary for the State to show that his negligence was the sole cause of injury or death. It is sufficient if it contributed as a proximate cause.

Error is assigned in granting plaintiff's motion for a directed verdict as to punitive damages on defendant's counterclaim. It is argued that this ruling not only deprived defendant of the right to recover punitive damages on his counterclaim but also eliminated his defense

of contributory recklessness and willfullness. The trial Judge held that there was no evidence of recklessness or willfullness on the part of plaintiff. He later charged the jury that if they found for the defendant on the counterclaim, only actual damages could be awarded but he did not say why.

We are inclined to think that the Court was in error in holding that there was no testimony supporting an inference of recklessness on the part of the plaintiff but do not think the error was prejudicial for two reasons:

(1) It is implicit in the verdict rendered that the jury did not find any negligence on the part of the plaintiff. Perhaps through inadvertence plaintiff failed to set up a plea of contributory negligence and recklessness to defendant's counterclaim. The jury was accordingly instructed that defendant was entitled to a verdict on his counterclaim if they found any negligence on the part of plaintiff which was the proximate cause of his injury. Therefore, the jury's failure to find a verdict for the defendant on his counterclaim necessarily meant that they found no negligence on the part of the plaintiff. If there was no negligence on his part, necessarily there was no recklessness or willfullness.

(2) Despite the fact that he had directed a verdict as to punitive damages on the counterclaim, the trial Judge in his charge did not eliminate recklessness or willfullness on the part of plaintiff. He instructed the jury in part as follows:

"Now, what is contributory willfullness? The law says is the conscious failure to exercise ordinary care, or the reckless disregard of his own safety on the part of a person injured by the actionable willfullness of another combining and concurring with that willfullness and contributing to the injury as a proximate cause thereof, and without which it would not have occurred. As I told you, contributory negligence is a good defense to negligence, and contributory willfullness is a good defense to willfullness, but if I am guilty of contributory negligence and you the defendant are guilty of willfullness you cannot set up my contributory

negligence as a defense against your willfullness. You can see that is common sense. Nothing complicated. Now, gentlemen, whether you find any of these parties guilty of negligence or willfullness entirely depends upon what you believe about the facts in the case. * * * Was the plaintiff negligent or willful in any of the particulars alleged by Boney in his counterclaim? Was such negligence or willfullness the proximate cause of Boney's injury?"

The jury was further given the following request by defendant:

"I charge you further that if you find that both the plaintiff, William Green, and the defendant, Furman Boney, were guilty of negligence of the same degree it does not matter which was the more negligent of the two for if the plaintiff, William Green, was negligent to any extent and such negligence contributed to his injury and damage as a proximate cause thereof without which the same would not have occurred, the plaintiff Green could not recover a verdict against the defendant Boney in this action."

It must be conceded that there was some inconsistency in directing a verdict as to punitive damages on the counterclaim and thereafter submitting to the jury the issue of recklessness and willfullness on the part of the plaintiff. But no question thereabout was raised by counsel at the conclusion of the charge. It should be added that the ruling on the motion for a directed verdict was made in the absence of the jury.

Defendant claims that the Court erred in charging the doctrine of "last clear chance" or "discovered peril". No question is raised as to the correctness of the principles stated. The contention is that they were inapplicable under the facts. The instructions complained of were given immediately after charging the following request by defendant:

"I charge you further that excessive speed of a driver who is traveling on his proper side of the road cannot be the

proximate cause of or contributing factor to a collision with another automobile coming from the opposite direction on the wrong side of the road or which abruptly and wrongfully without warning turns across the center line of the road into the path of the driver who is proceeding on his proper side of the road in plain view *provided the driver who is on his proper side of the road does all that is reasonably possible to avoid the collision after he discovers the peril.*" (Italics ours.)

Apart from the fact that the doctrine of last clear chance was invoked in defendant's plea of contributory negligence and recklessness and also in his counterclaim, we think that he himself injected this issue by that portion of the foregoing request which we have italicized. He is now in no position to complain.

The next exception relates to the refusal of the Court to charge the following request by defendant: "I charge you that where a motorist desires to turn across a highway in this State at a place where the South Carolina Highway Department has placed a yellow line in the lane in which he is then traveling, so as to enter a driveway to a private residence, he is on notice that he is turning at a hazardous place, and must exercise a high degree of care in executing such turn, because by said line he has been warned that his view of oncoming traffic from the opposite direction is restricted."

Assuming that the request was a proper one, we do not think the failure to charge it was prejudicial. The duty devolving upon a motorist in undertaking to make a left turn into a private driveway was fully covered in the general charge. The statutory law governing left turns was read to the jury and at the request of the defendant, the Court gave the following instructions:

"I charge you further that one who violates the law of the road by driving on the wrong side assumes the risk of such action and is required to use *greater* care than if he

had kept on the right side of the road. * * * I charge you further that if you find from the evidence that the defendant, Furman Boney, was proceeding north on the highway in question on his proper side of the road and that the plaintiff, William Green, proceeding south on said highway either saw or should have seen the approach of Boney, but nevertheless drove to the left of the center of the line of the highway, or turned across same when Boney's approach was so close as to present an immediate hazard then the plaintiff, William Green, cannot recover a verdict against the defendant * * *. I charge you further, gentlemen, that if a person drives an automobile to the left of the center of the road in the direction in which he is traveling and has a collision with another automobile coming from the opposite direction on its proper side of the road where it had a right to travel that such one traveling on the left of the center of the road is presumed to be negligent, and that such negligence was presumed to be the proximate cause of an injury if one were suffered, * * *."

The final attack upon the charge is that toward the end in summarizing the issues, the Court failed to include the defense of contributory negligence and recklessness set up in the answer. The Court discussed this defense several times and fully explained it to the jury. There was no necessity of repeating it again at the end of the charge. It is inconceivable that the jury did not understand that they were to pass upon this defense.

Error is assigned in refusing a motion by defendant for a continuance until a guardian ad litem was appointed for him. At the time of the service of the summons and complaint on May 2, 1956, the defendant had been sentenced to a term of imprisonment and was in the custody of the Sheriff of Fairfield County, but it is not shown that this fact was then known to the plaintiff. An array of able counsel appeared for defendant and filed an answer and counterclaim on June 8, 1956. Some time later defendant

was permitted to amend his pleadings. No question was raised about the necessity of a guardian ad litem until November 12, 1956, when defendant's counsel gave notice of a motion for an order abating or continuing the action "until such time as on proper notice a guardian ad litem is appointed to appear for him in said action," upon the ground that the defendant was confined in the State Penitentiary. On the same day counsel gave notice of a motion for a change of venue on the ground that he could not obtain a fair trial in Fairfield County. These motions were heard and refused on November 19, 1956 and trial commenced on the same day.

At common law a person in prison could be sued ■ and the mere fact that he was so confined furnished no exemption against service of civil process on him. *White v. Underwood,* 125 N. C. 25, 34 S. E. 104, 46 L. R. A. 706; 42 Am. Jur., Process, Section 104; 41 Am. Jur.. Prisons and Prisoners, Section 39; 72 C. J. S. Process § 82, page 1123. However, Sections 10-232 and 10-237 of the 1952 Code provide that a person imprisoned shall appear by guardian ad litem in any action by or against him. If plaintiff, such guardian ad litem shall be appointed upon his application or that of a relative or friend. If defendant, the appointment may be made upon his application if he applied within twenty days after services of the summons, or if the person imprisoned fails or neglects to so apply, the application may be made by the other party to the action upon due notice.

We think the Court correctly refused the motion for a continuance. Defendant had ample opportunity to apply for appointment of a guardian ad litem. Instead of doing so, his able counsel, with full knowledge of the statute, filed an answer and counterclaim and raised no question about a guardian ad litem until the eve of the trial. The right to such appointment has been waived. *Cobb v. Garlington,* 100 S. C. 51, 84 S. E. 302.

Lastly, it is contended that the Court erred in refusing a motion for change of venue made upon the ground that defendant could not get a fair and impartial trial in Fairfield County. We have carefully considered the affidavits for and against the motion and find no abuse of discretion in refusing it.

Judgment affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.