**PEPSI–COLA DISTRIBUTORS OF CHARLESTON, INC., a corporation, Appellant,**

v.

**Ronald L. BARKER, Appellee.**

**No. 7980.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 6, 1960.

Decided Jan. 21, 1960.

Joseph R. Young, Charleston, S. C. (Hagood, Rivers & Young, Charleston, S. C., on the brief), for appellant.

William H. Grimball, Jr., Charleston, S. C. (Arthur C. Baker, Charleston, S. C., on the brief), for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and DALTON, District Judge.

BOREMAN, Circuit Judge.

This is an action for damages resulting from a collision between motor vehicles at the intersection of Spruill Avenue and McMillan Avenue in the Charleston Heights area of Charleston, South Carolina. Involved were an automobile owned and driven by the plaintiff below, Ronald L. Barker, and a truck owned

by Pepsi-Cola Distributors, defendant below, and driven by its employee, Hamm. Spruill Avenue is approximately fifty feet wide with five traffic lanes.

■ Shortly after eight o'clock in the morning of February 13, 1958, Hamm was driving the Pepsi-Cola truck in a southerly direction on Spruill Avenue and Barker was driving westerly on McMillan. Traffic control signals or lights for vehicles on Spruill are suspended over the center of the entire intersection and the lights controlling the movement of vehicles on McMillan are suspended at the nearest edge of the intersection at which traffic is entering Spruill. The collision occurred in the intersection and while the exact point of impact was not definitely determined, both vehicles were together at the westerly line of Spruill following the accident. It was raining or sleeting at the time and the streets were wet.

At the conclusion of the testimony for Barker, Pepsi-Cola moved for a directed verdict, made the same motion at the conclusion of all the testimony and moved for a directed verdict in its favor as to punitive damages. The jury returned a verdict for Barker in the sum of $654.88 as actual damages and $4200.00 as punitive damages. The evidence showed that the actual cost of repairs to the Barker automobile was $654.88. There was no finding of damages for Barker's asserted personal injuries. Following the verdict, Pepsi-Cola moved for judgment non obstante veredicto. All of the motions were denied.

Pertinent sections of the laws of South Carolina as to the meaning of colored traffic control signals are set forth below.[1] Barker testified that when he entered Spruill Avenue from McMillan, the traffic light was green; that he was traveling at a speed of 10 to 15 miles an hour and, as he was almost clear of the intersection, the truck approaching from his right and driven by Hamm struck his automobile. If his testimony is to be accepted as true, he was lawfully in the intersection and had the right of way over vehicular traffic on Spruill Avenue. Pepsi-Cola's evidence was to the effect that for some distance before reaching the intersection of Spruill and McMillan, Hamm had been driving at a speed of 35 to 40 miles an hour although the maximum speed was 35 miles an hour; that before he reached the intersection he did not stop but slowed to a speed of approximately 25 miles an hour, and as he entered the intersection he had the green light; that he was in the right or westerly traffic lane; that a truck was stopped at the intersection in the lane to his left and that he did not see the Barker automobile approaching from his left. Hamm stated that the side windows of the truck were "fogged" but his vision through the windshield was clear. Evidence was presented to show that the lights governing the traffic in every direction at the intersection are synchronized, and to prove the number of seconds during which the green, yellow and red lights are displayed.

Thus, it is apparent that the evidence was directly conflicting, each party claiming to have the right of way over the other and each party claiming to have entered the intersection on the green

---

1. Code of Laws of South Carolina 1952.
    "§ 46-306. Meaning of traffic-control signals. * * *
    "(1) Green alone or 'Go' means that
    "(a) Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn, but vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited;
    * * *

    "(2) Yellow alone or 'Caution' when shown following the green or 'Go' signal or in combination with the green signal means that
    "(a) Vehicular traffic facing the signal is thereby warned that the red or 'Stop' signal will be exhibited immediately thereafter and such vehicular traffic shall not enter or be crossing the intersection when the red or 'Stop' signal is exhibited; * * * * "

light. The jury found in favor of Barker, undoubtedly accepting his testimony as true.

Counsel for Pepsi-Cola argues, from a mathematical calculation that if Barker was traveling at the speed he claimed, and if the light controlling traffic on McMillan in a westerly direction was green when he entered the intersection, he would have crossed Spruill Avenue and would have cleared the intersection with safety and without danger of collision with vehicles lawfully proceeding southerly on Spruill. It was contended that it was difficult for Barker to see the lights on McMillan, due to their location, as he entered or was about to enter Spruill.

In Benton v. Pellum, 232 S.C. 26, 100 S.E.2d 534, 536, the court approved the refusal of the trial court to direct a verdict for the defendant, upheld the verdict for both actual and punitive damages, and said:

> "Considering this conflicting testimony in the light most favorable to respondent [plaintiff], as must be done in passing on a motion for a directed verdict, we think the jury could reasonably infer that appellant [defendant] was reckless in failing to keep a proper lookout, in failing to have his car under control, and in driving at an excessive rate of speed * * *."

In the case of Scurry v. International Paper Company, 227 S.C. 392, 88 S.E.2d 256, 258, the evidence of the plaintiff and the defendant was conflicting as to the circumstances of a collision between an automobile and a truck. The court held that the jury was the proper tribunal to pass upon the conflicting evidence and stated:

> " ' So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable

minds, of any other.' 20 Am.Jur. Evidence, Section 1183."

Again, where the evidence as to the cause of a collision and the circumstances was sharply conflicting, it was held: "This presented squarely an issue for the jury as to which vehicle was driving on the wrong side of the road." Smith v. Hardy, 228 S.C. 112, 88 S.E.2d 865.

In the recent case of Green v. Boney, 1958, 233 S.C. 49, 103 S.E.2d 732, 66 A.L.R.2d 1370, the plaintiff was making a left turn from the highway and was struck by defendant's vehicle coming from the opposite direction. A motion for a directed verdict was denied and an award of $2,000.00 as punitive damages was sustained. There was testimony as to excessive speed and failure to have defendant's car under control. The court held that the evidence clearly warranted an inference of actionable negligence and recklessness on the part of the defendant.

Another recent case, Rogers v. Florence Printing Company, 1958, 233 S.C. 567, 106 S.E.2d 258, 261, although an action for libel, forcefully points up the attitude of the courts of South Carolina toward the allowance of punitive damages. There the verdict for actual damages was $5,000.00 and for punitive damages, $20,000.00. We quote at length from that case as follows:

> "But we need dwell no longer upon the rationale, or upon the merits or demerits, of the doctrine. Acquiescence in it for almost two centuries justifies the conclusion that it is now agreeable to, and part of, the public policy of the state.
>
> * * * * * *
>
> " ' Punitive damages have now come, however, to be generally, though not universally, regarded, not only as punishment for wrong, but as vindication of private right. This is the basis upon which they are now placed in this state.'
>
> * * * * * *
>
> "Exemplary or punitive damages go to the plaintiff, not as a fine or

penalty for a public wrong, but in vindication of a private right which has been willfully invaded; and indeed, it may be said that such damages in a measure compensate or satisfy for the willfulness with which the private right was invaded, but, in addition thereto, operating as a deterring punishment to the wrongdoer, and as a warning to others.

\* \* \* \* \* \*

"The fact that the verdict for punitive was four times as large as that for actual damages does not of itself compel us to disturb the former. There would appear to be no sound reason for a rule requiring the one to be in definite ratio to the other; and no such rule exists in this state. Eaddy v. Greensboro-Fayetteville Bus Lines, 191 S.C. 538, 5 S.E.2d 281. Cf. Beaudrot v. Southern R. Co., supra [69 S.C. 160, 48 S.E. 106], in which a verdict of $1,016.66 was sustained where the actual damage was about $2.50; and Hall v. Walters, 226 S.C. 430, 85 S.E. 2d 729, where award of $25,000.00 punitive damages was affirmed, the verdict for actual damages being in the amount of $1,000.00."

In Hicks v. McCandlish, 1952, 221 S.C. 410, 70 S.E.2d 629, 631, it was stated:

"The cases make the distinction, however, that negligence may be so gross as to amount to recklessness, and when it does, it ceases to be mere negligence and assumes very much the nature of wilfulness. So much so that it has been more than once held in this state that a charge of reckless misconduct will justify the jury, if the same be proved, in awarding punitive damages. Proctor v. Southern R. Co., 61 S.C. 170, 39 S.E. 351."

See also Jeffers v. Hardeman, 231 S.C. 578, 99 S.E.2d 402.

In South Carolina, exemplary damages will be allowed "when the wrongdoer does not actually realize that he is invading the rights of another, pro-

vided the act is committed in such a manner that a person of ordinary prudence would say that it was a reckless disregard of another's rights". Bennett v. Charleston Union Station Co., 90 S.C. 308, 73 S.E. 340, 341. To the same effect see Bailey v. Smith, 132 S.C. 212, 128 S.E. 423; annotation 98 A.L.R. 267; Anderson v. Atlantic Coast Line R. Co., 179 S.C. 367, 184 S.E. 164, 104 A.L.R. 406; Sanders v. General Motors Acceptance Corp., 180 S.C. 138, 185 S.E. 180.

It was for the jury to say, "under the evidence, whether the acts of omission and commission were committed by the defendants in such a manner that a person of ordinary reason and prudence would say that it was reckless disregard of the rights of the plaintiff". Hicks v. McCandlish, supra.

In Dickson v. Inter-Carolinas Motor Bus Co., 161 S.C. 297, 159 S.E. 625, 626, the jury returned a verdict for actual and punitive damages. The court held:

"A question as to the excessiveness of a verdict, where there is any evidence tending to support the same, is a matter for the determination of the trial judge in the exercise of his power and discretion, and when he refuses to disturb the verdict this court has no power to do so in the absence of a showing that there was an abuse of discretion in failing to grant a motion made for that purpose."

In the instant case, the jury could have found from the evidence that Hamm failed to observe a red traffic light, that his vision was obscured, that he was not maintaining a proper lookout, and that such acts constituted recklessness on his part and a wilful disregard of the rights of others, including the plaintiff, as those concepts have been developed in the South Carolina cases. While we find it difficult to rationalize the imposition of punitive damages against an employer for recklessness on the part of an employee who may have been investigated and selected, through the exercise of the very highest degree of care, as a

careful and cautious driver, yet, in applying the law of South Carolina as formulated and pronounced by the highest court of that state, we are of the opinion that the refusal of the District Court to grant Pepsi-Cola's several motions must be

Affirmed.