18003

Hazel Salley HORTON, Administratrix of the Estate of J. C. Scott, Appellant, v. The GREYHOUND CORPORATION, James E. Norman and Adelaide Weaver, of Whom The Greyhound Corporation and James E. Norman are, Respondents.

(128 S. E. (2d) 776)

*Messrs. James P. Mozingo III, John P. Gardner* and *Greer & Chandler,* of Darlington, and *D. Carl Cook,* of Hartsville, *for Appellant,*

*Messrs. Wright, Scott, Blackwell & Powers,* of Florence, and *Paul A. Sansbury,* of Darlington, *for Respondents,*

December 11, 1962.

BRAILSFORD, Justice.

J. C. Scott was killed in a head-on collision between a pick-up truck, in which he was a passenger, and a Greyhound bus. This action was brought by Scott's Administratrix, under the wrongful death statute, against The Greyhound Corporation and its bus driver. A trial resulted in a verdict for the defendants by direction of the court and plaintiff appealed. Admittedly, the evidence was sufficient to raise a jury issue as to whether the bus was being operated at an excessive rate of speed. The sole question is whether plaintiff sustained the burden of producing evidence from which a reasonable inference of causal connection between the speed of the bus and the fatal collision may be drawn; or whether such an inference may be drawn from all of the evidence.

On a clear day in June, 1959, the bus approached the scene of the collision from the north, traveling along Highway No. 52, toward Darlington. The truck approached from the south. The vehicles met on a long, rather sharp curve. The centerline of the highway was marked with double yellow lines to indicate no passing. At about the apex of this curve, a secondary highway intersected from the west, or to the right of traffic headed toward Darlington. The collision, in which both occupants of the truck were killed, occurred in the intersection, south of the center of the secondary road and on the extreme right of the lane for south bound traffic on Highway No. 52. The right wheels of the bus were on the asphalt shoulder at the point of impact.

The damage to the truck was described by the investigating patrolman as having been, "On the right front. * * * It looked like all over the right front. From here on back. (Indicating on photograph?) From the front wheel on back on the right side." The only testimony as to the point of impact on the bus was that certain photographs showed "the damage to the front part. * * *"

The patrolman testified that when he arrived at the scene "the bus was on the right hand side facing Darlington, south. * * * Off on the shoulder of the road up a little embankment;" 43 feet, 10 inches from the point of impact. The truck was also on the western side of the highway, "just off on the shoulder * * *;" 34 feet, 10 inches from the point of impact.

There were no marks on the highway indicating that the brakes of the truck had been applied. The first tire marks made by the bus were described by the patrolman as friction marks, not skid marks. "You wouldn't necessarily be applying brakes but you had those friction marks." These extended 28 feet to the beginning of definite brake or skid marks, which, in turn, extended 98 feet, 10 inches to the point of impact.

In addition to evidence of these physical facts, the plaintiff offered three witnesses who saw the bus in motion prior to and at the moment of impact. None of them saw the truck until afterward. Two of these witnesses testified that they were traveling toward Darlington when the bus passed them at or near Moody's store, some 1200 feet north of the intersection. They estimated its speed at from 70 to 80 miles per hour. They did not see the collision, but saw the bus as it went off the road and "a lot of dust and calamity there in the road * * *" The other witness was standing near the scene. He could see the bus but not the eastern lane of the highway. He noticed "the bus putting on his brakes * * * right pretty close this Bennettsville Motel sign." (Much of the testimony as to locations is unintelligible because the

witnesses were examined with reference to maps, photographs and a model of the scene, which are not included in the record on appeal.) The witness observed that the bus was leaving the road and saw when it "hit but—couldn't tell exactly what it did hit. * * *" The bus then struck a ditch and "it looked like it jumped ten foot in the air." It came to rest with its rear wheels in the ditch.

In the foregoing summary of plaintiff's evidence we have dealt generally with that relating to excessive speed only, because the sufficiency of the evidence in this respect must be conceded. On the other hand, we have striven to include every circumstance which could possibly be urged in support of a finding of proximate cause.

The bus driver testified that as he approached the intersection, at about 50 miles per hour, he saw a pick-up or panel truck stopped in the north bound lane, giving a left turn signal. Further, as "I got very close to this pick-up or panel truck, ever what it might have been, I noticed this pick-up coming from behind. I was awful close and it was in a weave and it just came directly from behind it right straight out in the path of me. I pulled to the right. I threw all the brakes on I had. And we collided there in the center of this—I would say a little past the center right along here (indicating S-134).

* * *

"Q. Were your brakes on at the time of the impact?

"A. Yes, sir, my brakes was on at the time of the impact and when I hit, why, of course, it threw me away from the brakes. I went through the windshield almost.

* * *

"Q. At the point of impact was any part of your bus on that eighteen foot pavement?

"A. Yes, sir, my left wheels were. Yes, sir.

* * *

"Q. Can you estimate how fast this pick-up was going that swerved out and across into the front of the bus?

"A. Well, sir, I really couldn't say, but it was awful fast.

* * *

"Q. And how far would you estimate that you were away from the front of this vehicle that was stopped there when this other truck swerved out to the left in front of you?

"A. Now in that question, of course, you would seem that you was a lot closer than probably you was because it all happened so fast.

"Q. Could you estimate about how far you were?

"A. I would estimate when I first noticed this vehicle that it was going to come into my path, I would say I was within thirty feet of it.

"Q. Of the front of this other vehicle?

"A. Yes, sir."

The driver's testimony was corroborated by two disinterested witnesses, who were passengers on the bus, one a school boy and the other a marine. We quote from the former's testimony:

"Q. Will you tell the Court and jury what you saw?

"A. Well, we were coming up the road and there was a car or a truck, a vehicle, parked—I don't remember—and the bus driver slowed down as—so he wouldn't hit it if he did turn in front. And so all of a sudden this other truck turned out in front of him and the bus driver slammed on brakes and kind of turned to the right but he couldn't avoid hitting him because he turned right in front of him.

\* \* \*

"Q. Do you have any idea how fast this pick-up was coming that turned out in front of the bus?

"A. Well, it was coming pretty fast because I didn't see it hardly any before the accident. It just appeared right then."

And from the testimony of the marine:

"Q. When you were sitting there looking out of the windshield will you tell us what you saw?

"A. I don't understand—what I saw when?

"Q. Just prior to the accident.

"A. We were coming going around a curve at the time and I saw a truck stopped with the left-hand turn signal on

to make a left-hand turn. I felt the bus driver slowing down the bus * * *.

* * *

"Q. Did you feel any brakes being applied on the bus?

"A. At the time of when I saw the truck, yes, sir.

"Q. And then did you see anything else?

"A. Yes, sir, I did. I saw this truck coming up very fast at a high rate of speed and cut out in back of the truck that was stopped, right into the path of the bus. The bus driver slammed on his brakes and swerved to turn to the right * * *.

* * *

"Q. Do you have any idea or can you estimate how far you were and the bus was from the front of this vehicle that was going to turn when you saw the pick-up swerve out in front of you?

"A. He swerved out when we were almost on top of him, sir, because as he swerved out, it was a matter of seconds, almost immediately, when I felt the impact of the bus hitting the vehicle and then another impact when we hit the ditch."

The legal principles which control the rights of the parties are well established. The burden was on plaintiff in the court below to prove that the bus driver was negligent, in one or more of the particulars specified in the complaint, *and* that such negligence on his part was a proximate cause of the fatal collision. Negligence may be deemed a proximate cause of an injury only when without such negligence the harm would not have occurred or could have been avoided. Questions of proximate cause are ordinarily for the jury and may be resolved by direct or circumstantial evidence. "The right to recover on circumstantial evidence for death resulting from another's negligence depends upon the reasonable and logical connection such proof establishes between the death and the negligent act alleged to have caused it. It is incumbent upon the plaintiff, in the absence of direct evidence, to show the existence of such circumstances as would justify the inference that the injury

which caused the death was due to the wrongful act of the defendant, and not leave the question to mere speculation or conjecture." *Leek v. New South Express Lines,* 192 S. C. 527, 7 S. E. (2d) 459. In passing upon a motion for a directed verdict, it is the duty of the court to view the evidence and all inferences which may reasonably be drawn therefrom in the light most favorable to plaintiff. However, where the only reasonable inference from the evidence is that there has been a failure of proof as to a material element of plaintiff's cause of action, it becomes the duty of the court to resolve the issue against the party having the burden of proof by directing a verdict. Whether more than one reasonable inference can be drawn is, necessarily, for the court to determine. Otherwise, verdicts would be allowed to rest on conjecture and speculation, which is prohibited. On appeal, the presumption is that the case was decided correctly in the trial court.

The able and experienced trial judge concluded that ■■ the only reasonable inference to be drawn from the evidence was that the fatal collision was caused by the negligence and recklessness of the driver of the truck in which Scott was a passenger; and that no reasonable inference of causal connection between the speed at which the bus was operated and the collision could be drawn. The trial judge heard and observed the witnesses examined with respect to exhibits which were themselves material evidence and which are not before us. Accordingly, he had a better view of the situation than we are afforded. We should be slow to conclude that he erred in his appraisal of the evidence, when material portions of it have been omitted from the record on appeal. 4A C. J. S., Appeal and Error, § 1172. It is abundantly clear that the primary efficient cause of the collision was the unlawful act of the truck driver in turning his north bound vehicle into the south bound lane of travel, which was occupied by the approaching bus. It is equally clear that the only evidence of a negligent or unlawful act by the bus driver relates to excessive speed, which could not

have resulted in harm to Scott if the truck had remained in its proper lane of travel. The concurrence of excessive speed with this primary, efficient cause of the collision does not impose liability on the defendants unless, without it, the collision would not have occurred. 38 Am. Jur., Negligence, § 54; *Horne v. Southern Ry. Co.*, 186 S. C. 525, 197 S. E. 31, 116 A. L. R. 745, from which we quote:

"* * * [c]oncurring causes operate contemporaneously to produce the injury, *so that it would not have happened in the absence of either.* * * * It is enough (to impose liability) to show that it is a proximate concurring cause; *that is, one that was so efficient in causation that, but for it, the injury would not have occurred* * * *" (interpolation and italics ours).

That speed was a contributing factor in placing the bus at a particular location on the highway when the emergency arose is without legal significance, because the defendants had the legal right to occupy that portion of the highway.

When the two vehicles confronted each other in the same lane of travel, the collision was virtually inevitable unless both could have been stopped short of the point at which they met. Even if the bus could have been brought to a stop at this point, an instant before the truck arrived there, the collision would have occurred anyway. How far short of this point stopping the bus could have avoided a collision is a matter of speculation. A considerable distance is suggested by the evidence as to the speed of the truck and that its driver never effectively applied brakes.

The bus driver was required to operate the bus at a speed that was reasonable and prudent under the conditions and to drive at such a speed as to avoid colliding with any vehicle on the highway in compliance with legal requirements and the duty of all persons to use due care. Sec. 46-361, Code of Laws, 1952. However, he was not required to anticipate that the truck would suddenly turn into his lane

of travel and to drive at such a speed as to avoid collision with it in this event. Therefore, the length of the skid marks made by the bus cannot, alone, constitute evidence of causal connection between excessive speed and the collision. *Some evidence* that if the bus had been operated at a reasonable speed it could have been stopped at *some distance* short of the collision point is required to support such an inference. There is no such evidence. Instead, the only testimony on the point is that of the bus driver, who stated that some 220 feet would be required to stop this bus from a speed of 45 miles per hour. This evidence is not inherently incredible, nor contrary to general or common knowledge. Instead, it is supported by braking charts published in Am. Jur. (2d), Deskbook, particularly document No. 176, page 456, which indicates that a braking distance of 208 feet is required to stop a vehicle of this general type from a speed of 45 miles per hour. We recognize that these charts are not evidence, and refer to them only to emphasize the vice which would have been involved if the court had allowed the jury to draw a contrary inference without supporting evidence.

The physical evidence establishes conclusively that when the truck confronted the bus in its lane of travel, the vehicles were in such proximity to each other that, by the time the bus driver could effectively apply brakes, the bus was only 98 feet, 10 inches from the collision point. There is no claim that he failed to apply them promptly when the peril arose. Since this was less than half of the required stopping distance at 45 miles per hour, the excessive speed of the bus must be regarded as coincidental rather than as causal. Its mere concurrence with the efficient cause of the collision does not impose liability on the defendants.

A careful study of the brief of plaintiff's counsel fails to reveal what circumstance or circumstances they rely upon to support an inference that without the excessive speed of the bus the collision would not have occurred. They ably marshal the evidence which tends to establish that the speed

of the bus was excessive and several times conclude that such evidence required submission of both issues to jury. However, if they make any factual argument in support of this conclusion as to causal connection, it is confined to the evidence relating to the distance traveled by the bus after the application of brakes, its momentum at the point of impact, its continued forward motion and the force with which it struck the ditch, by which it was stopped when the back wheels dropped in and the body of the bus rested on the ground. While these circumstances were significant at the trial on the issue of excessive speed, we have already stated our reasons for holding that they are insufficient to establish causal connection between it and the occurrence of the collision, which is the only issue involved here.

This is simply one of those rare cases in which the evidence, although sufficient to support an inference of concurrent negligence by the defendants, is insufficient to support a reasonable inference that without such negligence the collision would not have occurred. Our conclusion does not and need not rest on a certainty that, if the bus had been operated at a reasonable speed, the collison would have happened anyway. It does rest on the absence of evidence sufficient to raise a reasonable inference that it would not have occurred but for the negligence of the bus driver, which amounts to a failure of proof of an essential element of plaintiff's cause of action. That our appraisal of the evidence results in non-liability is elementary law and need not be buttressed by further citation of authority. Each case must be decided by applying the principles which have been stated to the special facts belonging to it. We have carefully considered all of the authorities cited by appellant and find none that is opposed to the principles which have guided our decision. Each was based on the court's estimate of the inferences which could reasonably be drawn from its particular facts. A review of them would unnecessarily prolong this opinion. However, out of deference to counsel, we refer briefly to *Green v. Boney,* 233 S. C. 49, 103 S. E. (2d)

732, 66 A. L. R. (2d) 1370, on which they rely as a binding precedent, which, quoting from their brief, "demands the reversal of the trial Court below."

In that case there was evidence from which it could be inferred that plaintiff undertook to make a lawful left turn across the highway, after having observed that there were no vehicles in sight for a distance of 500 feet, and that the turn could have been completed with safety but for the excessive speed of defendant's car, which was estimated to have been up to ninety miles per hour; and, further, that the defendant could have stopped in time to have avoided the collision with plaintiff's car if he had been keeping a proper lookout and driving at a reasonable speed. The "but for" or "without which" test of proximate cause, when applied to the evidence in the *Green case,* required the submission of the issues to the jury. The same test applied to the evidence in this case requires the result which we reach. See cases collected in Anno: *Negligence of motorist colliding with car approaching in wrong lane,* Sec. 27. *Speed as proximate cause,* 47 A. L. R. (2d) 99, which illustrate that excessive speed by the driver in his proper lane may be a proximate cause of a collision with an approaching car, or may not be; and that the issue is usually, but not always, for the jury. For other illustrative cases, see *O'Mally v. Eagan,* 43 Wyo. 233, 2 P. (2d) 1063, 77 A. L. R. 582 and appended annotation.

The dissenting opinion quotes an excerpt from the testimony of the highway patrolman as to what the bus driver told him after the accident. We have not discussed this incomplete, ambiguous narrative because it was not mentioned in the rather full briefs, nor commented on by counsel in oral argument.

Affirmed.

TAYLOR, C. J., and MOSS and BUSSEY, JJ., concur.

LEWIS, J., dissents.

Lewis, Justice (dissenting).

In my opinion, the evidence and the reasonable inferences properly drawn therefrom, viewed in the light most favorable to the plaintiff, as we are required to do in considering an appeal from a directed verdict for the defendant, presented issues of fact which were for the jury to determine and not the court. I, therefore, respectfully dissent.

The collision occurred at an intersection of two State Highways as the driver of the truck in which the plaintiff's intestate was riding made a turn at the intersection from his side of the road to the left across the lane of traffic in which the defendant's bus was proceeding. The majority opinion is bottomed upon the conclusion, erroneously I think, that the only reasonable inference to be drawn from the testimony is that the driver of the pick-up truck turned suddenly into the path of the defendant's bus, and that regardless of the speed of the bus the driver could not have avoided the collision.

There is testimony from which the conclusion may be reasonably drawn that the driver of the bus realized that he was approaching a situation of danger in ample time to have avoided the collision if he had been operating the bus at a lawful and reasonable speed.

The record sustains the inference of excessive speed on the part of the bus. Witnesses testified that the bus was travelling from 70 to 80 miles per hour as it passed another vehicle about 1200 feet from the intersection. There was other testimony that it was traveling from fifty to fifty-five miles per hour at the time of the collision, after applying the brakes. Before the impact, the bus made 28 feet of tire friction marks on the pavement, followed by 98 feet 10 inches of definite brake or skid marks. The pick-up truck was knocked 34 feet 10 inches from the point of impact and the bus then travelled 43 feet 10 inches, struck a ditch, bounced into the air approximately 10 feet, coming to rest on the bank of the ditch. This testimony clearly presented a jury issue as to the excessiveness of the speed of the bus.

The testimony also presents an issue of fact as to whether the pick-up truck turned abruptly into the path of the bus. The driver of the bus testified that when he "first noticed this vehicle that it was going to come into my path, I would say I was within thirty feet of it." Yet, the uncontradicted physical facts show that, before the impact, the tires of the bus made 28 feet of friction marks followed by 98 feet 10 inches of definite brake or skid marks. As held in *Green v. Boney,* 233 S. C. 49, 103 S. E. (2d) 732, 66 A. L. R. (2d) 1370, in view of the testimony that the bus skidded approximately 127 feet before the collision, a jury would be fully warranted in rejecting the defendant's contention that when the vehicles were only approximately 30 feet apart, the driver of the pick-up truck suddenly made a left turn in front of the bus.

There was other testimony directly bearing upon knowledge by the driver of the bus of danger at the intersection in time to have avoided the collision if the bus had been operated at a lawful and reasonable speed. The driver of the bus testified that it would take a distance of approximately 230 feet to stop the bus from the time he first saw danger confronting him, travelling at a speed of 55 miles per hour. He further stated that, when he was approximately 250 feet away, he noticed a vehicle (which was never located after the wreck) in his left lane which had stopped at the intersection and was giving a signal to make a left turn. He said that, upon seeing this vehicle so stopped at the intersection, he applied brakes "because I wasn't sure as to what the vehicle was going to do," but later released his brakes as he realized that it was going to sit still. After getting closer to this vehicle, the driver testified that he then, for the first time, saw the pick-up truck come directly from behind the stopped vehicle. The patrolman, who investigated the accident, testified that the driver of the bus gave him the following version of what happened: "He was travelling toward Darlington which is south and said there was a cookie or bread truck, and he said he saw this pick-up truck coming

and he started to go on off the left-hand side because he didn't know what was going to happen; said he started slowing up. And said he saw this truck and he cut out to the left and that he cut back one more time and that is the last time he saw it until he hit him."

If the driver of the bus cut to the left after seeing the pick-up truck, as he told the patrolman after the collision, he must have seen the pick-up truck and made such turn at some point prior to the beginning of the tire marks on the pavement, which began 127 feet from the point of impact, because the record indicates nothing but a straight line of skid marks in the right lane of the bus.

Certainly, it cannot be correctly said that under this testimony the pick-up truck in which the intestate was riding turned suddenly into the path of the bus. The record gives rise to the reasonable inference that the bus driver saw, at least 250 feet away and within his estimate of braking distance, if driving at 55 miles per hour, the danger at the intersection and because of his excessive speed could not control the bus so as to avoid the collision, which it was his duty to do.

Since, in my opinion, the evidence gives rise to a reasonable inference that the driver of the defendant's bus was guilty of negligent or reckless conduct which contributed as a proximate cause to the death of plaintiff's intestate, I would reverse the judgment of the lower court and remand the case for a new trial.