19110

In The Matter of Joe F. ANDERSON, Respondent
(177 S. E. (2d) 130)

*Messrs. Daniel R. McLeod, Attorney General* and *Irvin D. Parker, Assistant Attorney General,* of Columbia, *for Complainant.*

*Messrs. W. H. Nicholson, Jr.,* of Greenwood, and *T. B. Bryant, Jr.,* of Orangeburg, *for Respondent.*

October 21, 1970.

*Per Curiam.*

Thomas W. Whiteside, as complainant, filed with the Board of Commissioners on Grievances and Discipline, pursuant to the rule on disciplinary procedure of this court, a verified complaint against Joe F. Anderson, the respondent herein, a duly licensed attorney, who resides and maintains an office for the practice of law, in Edgefield County, South Carolina. In the complaint it is alleged that the respondent committed acts of misconduct or indulged in practices which tend to pollute or obstruct the administration of justice or to bring the courts and the legal profession in disrepute by depriving Vena Belle Israel of her civil rights by unlawfully having her placed in jail for the purpose of extorting money from her. The respondent duly filed an answer to this complaint.

The Board of Commissioners on Grievances and Discipline, after full hearings, has found the respondent guilty of unprofessional conduct which tends to pollute the administration of justice and brings great discredit upon the Bar of this State and recommends that he be disbarred. Based upon the certified final report of the Board of Commissionres on Grievances and Discipline, such being duly filed with this court, we did, on July 29, 1969, issue an order directing the respondent to show cause before this court, on October 15, 1969, why the report of the said Board should not be confirmed and such disciplinary order as this court may deem proper be issued. This case was heard by us at the appointed time upon the aforesaid report and the return of the respondent thereto.

It appears from the record that one Thames Jamison died on May 6, 1961. He was survived by his widow, Mary Jamison, from whom he was estranged at the time of his death, and by two children of a former marriage, a son,

Thames W. Jamison, and a daughter, Mrs. Eleanor Osborne. Thames Jamison left a will in which he appointed Joe F. Anderson as executor. It further appears that Thames Jamison inherited a considerable fortune from his father, who died in 1955. After he had come into his inheritance, he led a dissolute life and completely dissipated his fortune. Jamison owned a home in Edgefield County and also a residence in Mountain Home, North Carolina, where he was residing at the time of his death. Prior to his death he had deeded the home in Edgefield County to his daughter and his farm to his son. Jamison separated from his wife in 1959, and Vena Belle Israel, his paramour, lived with him during the last year of his life at Mountain Home, near Hendersonville, North Carolina. He deeded his residence in North Carolina to Vena Belle Israel. At the time of his death his estate was insufficient to pay the substantial debts that he owed.

When Jamison and Vena Belle Israel took up residence in North Carolina, certain household furniture and other personalty was moved from Edgefield County to North Carolina and it is contended that some of this furniture and personalty was the property of Mary Jamison, as such had been moved at the time of her marriage to Jamison from her home in the State of Georgia to Jamison's home in Edgefield County. A considerable portion of such household furniture and personalty was in the residence in North Carolina at the time of the death of Jamison and, thereafter, was in the possession of Vena Belle Israel.

At the time of the death of Jamison, Vena Belle Israel was the beneficiary named in two of his life insurance policies, one of these policies was with Aetna Life Insurance Company and the beneficiary, upon the death of the insured, was entitled to receive thereunder the amount of $4,747.92. Vena Belle Israel had engaged the services of an attorney in Hendersonville, North Carolina, to assist her in the filing of her claims under the life insurance policies in which she was named beneficiary. There is evidence from which it can

be concluded that the respondent knew that Vena Belle Israel was the beneficiary named in the Aetna policy.

The respondent received information, after the death of Jamison, that Vena Belle Israel was in Aiken, South Carolina and that a 1957 Plymouth automobile, which belonged to the estate of Jamison, was in the vicinity of Edgefield County and in the said automobile were various clothing and other personal property. According to the respondent's testimony he had this automobile attached and stored at the Edgefield County Jail. He testified that he also had information that Vena Belle Israel had a trailer in Aiken and such was loaded with furniture and other personal property. The undisputed testimony shows that on May 30, 1961, the respondent on his individual signature, had issued by a Magistrate of Edgefield County a warrant charging Vena Belle Israel with the theft from Mary Jamison of furniture, clothing and miscellaneous articles of the value of $1,500.00, the alleged theft having taken place on May 15, 1960. After this warrant was issued, the respondent accompanied the Sheriff of Edgefield County to Aiken, South Carolina, and Vena Belle Israel was arrested upon said warrant by officers of Aiken County. After her arrest she was brought to the Edgefield County Jail where she was confined from May 30, 1961 until June 21, 1961, at which time she was released under the circumstances hereinafter stated. A trailer supposedly loaded with furniture and other personal property was not found.

Vena Belle Israel employed one Howard Williamson, an attorney of Aiken, South Carolina, to represent her and to secure her release from the Edgefield County Jail. This attorney visited his client several times while she was in jail and in an effort to get her released on bond, he discussed the case with the respondent. He was unable to get the amount of the bond fixed for some eight or ten days but finally the respondent suggested a bond of $1,500.00. This attorney failed to obtain his client's release because he was unable to secure a bondsman. This attorney testified that in

his opinion it was useless to obtain his client's release on bond inasmuch as the respondent led him to believe that in the event she was released on bond other charges would be placed against her returning her to jail. This attorney further testified that the respondent indicated to him that if Vena Belle Israel would endorse over the aforementioned insurance check, the charges upon which she was being held in jail would be dropped. He further testified that he discussed with Vena Belle Israel the question of delivering the insurance check to the respondent in order to effect her release. However, upon her reluctance so to do, it was agreed that she would stay in jail until the grand jury met and if she was indicted they would go to trial; and if not indicted that would dispose of the case.

As is heretofore stated, Vena Belle Israel engaged the services of an attorney in Hendersonville, North Carolina, to assist her in the filing of her claims under the life insurance policies in which she was named beneficiary. When this attorney received a check from Aetna Life Insurance Company in the amount of $4,747.92, he sent such check to the Edgefield County Jail by the Sheriff of Henderson County, North Carolina. The sheriff was to present the check to Vena Belle Israel, obtain her endorsement thereon, and return such check to the attorney in Hendersonville. On being refused permission to see Vena Belle Israel in the Edgefield County Jail, the Sheriff of Henderson County, returned the check to the attorney in Hendersonville, North Carolina. Thereafter, the check was forwarded by registered letter to Vena Belle Israel at the Edgefield County Jail. It appears that on June 19, 1961, a postal employee attempted to deliver such registered letter to Vena Belle Israel at the Edgefield County Jail but was refused admittance by the jailer. A short time later, on the same date, delivery of the registered letter was accomplished by another employee of the Edgefield Post Office.

The record shows that Vena Belle Israel delivered the Aetna insurance check, after endorsing same, to one Robert

Smith. The testimony is conflicting as to the instructions given to Smith by Vena Belle Israel. She contends that Smith was to cash the check and return the entire proceeds to her, while Smith contends that he was to receive $600.00, her attorney $400.00, and the rest was to be used to get her out of jail. Smith endorsed the check, gave it to the respondent, receiving from him the sum of $600.00, and delivered the instructions of Vena Belle Israel as to the amount to be paid to Howard Williamson, her attorney, for his services. The respondent endorsed the check that had been delivered to him by Smith, gave Smith $600.00, and paying over to Howard Williamson, in cash, the sum of $400.00. The sum of $250.00 was placed in the estate account of Jamison. The balance of the check was deposited to the personal account of the respondent where it remained until disbursed by him as is hereinafter stated.

It appears that Vena Belle Israel returned to South Carolina in a 1957 Plymouth automobile which belonged to the estate of Jamison. This automobile was attached by the respondent, as executor of the estate of Jamison. The equity of the estate in the automobile was appraised at $250.00 and this amount was deposited in the respondent's account, as executor of the Jamison estate, and the automobile released to Vena Belle Israel.

The record shows that after the respondent had received the above check, Vena Belle Israel was released from the Edgefield County Jail upon notification to the sheriff's office either by the magistrate or the respondent, or both, that the case against her had been settled. The entry made on the warrant book in the sheriff's office concerning the disposition of the case against Vena Belle Israel was the word "settled". The record does not show that any hearing was held, a bond posted or any order of the court filed.

The respondent testified that Mary Jamison, who was estranged from Jamison at the time of his death and was his surviving widow, requested his assistance in recovering her personal property from Vena Belle Israel. He states that

he promised to so assist her. He further testified that he had a warrant for the arrest of Vena Belle Israel issued upon his individual affidavit and that such was done on behalf of Mary Jamison. There is no testimony that Mary Jamison ever authorized the respondent to obtain a warrant charging Vena Belle Israel with grand larceny. The surviving son and daughter of Jamison testified that they never requested the respondent to obtain a warrant for the arrest of Vena Belle Israel.

It appears from the record that there was no probable cause for the issuance of a warrant charging Vena Belle Israel with grand larceny. The respondent admits that after Jamison had been acquitted of a murder charge he advised him that he thought it was best for him to live in North Carolina and away from Edgefield County. He knew that the furniture and other personalty was being moved from Jamison's home in Edgefield County to North Carolina. As a matter of fact, he testified that he had a letter from Jamison advising him that he intended to come to his home in Souh Carolina and get all the furniture. Whereupon, the respondent notified the son and daughter of Jamison of their father's intention and advised them to take possession of and remove the good furniture from the family home. This they did, and Jamison, accompanied by Vena Belle Israel, moved the remaining furniture to North Carolina. There is testimony that the respondent was present at the time of the removal of said furniture from the family home by Jamison and was aware of all the circumstances surrounding the removal.

The respondent contends that Mary Jamison had in her possession two diamond rings valued at $9,000.00, which had come to Thames Jamison under a prior will and upon his death one was to go to his son and the other to his daughter. He also contended that Mary Jamison had in her possession a stock certificate in which the Jamison estate had an interest, such having been issued jointly in the names of Mary Jamison and Thames Jamison. The respond-

ent testified that after he received the insurance check and had paid out the amounts heretofore recited, he had remaining approximately $3,500.00, which he planned to pay over to Mary Jamison in satisfaction of her claim against Vena Belle Israel, conditioned upon the said Mary Jamison returning the diamond rings and the stock certificate; but in the event he was not successful in this plan, it was his intention to pay over the balance of the insurance money to Mary Jamison. The question arises, and such has not been satisfactorily answered by the respondent, as to why he would pay over the sum of $3,500.00, which he received from Vena Belle Israel, when by his own affidavit in obtaining a warrant for her, he alleges the value of the property taken by Vena Belle Israel and belonging to Mary Jamison was only valued at $1,500.00. The further question arises as to why the respondent retained the $3,500.00 in his own personal account for some three years without making any disbursement of it.

It appears from the record that the respondent, the sheriff and a deputy sheriff of Edgefield County, and Bob Smith were indicted in the United States District Court for the Western District of South Carolina, and charged with depriving Vena Belle Israel of her liberty and property without due process of law, in violation of Title 18, Section 242 of the U. S. Code. This indictment further charged the same parties with conspiracy to deprive Vena Belle Israel of her constitutional rights, in violation of Title 18, Section 371 of the U. S. Code. This indictment grew out of the facts which we have heretofore stated. It further appears that on December 14, 1964, after most of the testimony in behalf of the government had been offered that the defendants entered a plea of *nolo contendere* to the aforesaid indictment. The respondent was given a sentence of one year and such was suspended with probation for a period of five years. One of the conditions of his probation was that he make immediate restitution to Vena Belle Israel of the full amount of the insurance check, with interest

thereon from June 21, 1961. The respondent promptly complied with this condition. The plea of *nolo contendere* entered by the respondent was not an admission of guilt except in the case in which it was entered and did not estop him in this proceeding from denying his guilt and offering any relevant testimony upon the issue. 152 A. L. R. 287 and 89 A. L. R. (2d) 600, Section 37 *et seq.;* 21 Am. Jur. (2d), Criminal Law, Section 502; 29 Am. Jur. (2d), Evidence, Section 702; 22 C. J. S. Criminal Law § 425(4). *Piassick v. United States,* 5 Cir., 253 F. (2d) 658. In reaching the conclusion hereinafter stated, we have disregarded the fact that the respondent entered a plea of *nolo contendere* in the United States District Court and base the conclusion upon evidence in the record independent of that concerning the plea of *nolo contendere.*

Vena Belle Israel, upon the affidavit of the respondent was charged with grand larceny, which in this State is a felony. The respondent argues in his brief that "If this warrant was improperly obtained and criminal process should not have been resorted to in the matter of Vena Belle Israel, then surely criminal process has been so used in many other similar cases in the state, and by reputable attorneys." This argument fails to recognize that the general rule is that agreements to compromise or stifle public prosecutions and similar agreements to obstruct or interfere with the administration of justice are contrary to public policy. Good faith of the parties at the time of the agreement does not change the rule. *Liberty Mut. Ins. Co. v. Gilreath,* 191 S. C. 244, 4 S. E. (2d) 126. We quote the following from this case:

"It is well settled that where property has been stolen or funds embezzled, it is not unlawful for the wrongdoer to make restitution and to satisfy the civil liability created by the wrong. Neither does the law prevent one, who has sustained a loss under such circumstances, from compromising with the wrongdoer, if it is not agreed either expressly or impliedly, that the prosecution for the offense shall be suppressed or stayed. Such an agreement, however, must not

be in consideration that a criminal prosecution shall be suppressed, stifled or stayed."

There can be no doubt from the record before us that the respondent, upon receipt of the Aetna Life Insurance check from Vena Belle Israel, had her released from jail and the charge which he himself had filed against her was "settled", thereby suppressing, stifling or staying the prosecution of one who had been charged with a felony, all of which was violative of the public policy of this State.

In *Norris v. Alexander,* 246 S. C. 14, 142 S. E. (2d) 214, we held that the right to practice law is not an absolute one; as an officer of the court the lawyer's tenure is during good behavior; and the court that admitted him to practice has power to discipline him for misconduct and such may be effected by disbarment, suspension or reprimand, when by clear and convincing proof it has been shown that the conduct of an attorney has been such as to warrant disciplinary action.

The Canons of Professional Ethics, as promulgated by the American Bar Association, were adopted as a rule of this court in 1956, and such Canons represent the consensus of the bar on the standard that the lawyers in their practice should follow and uphold. These Canons prohibit an attorney from engaging in practices that bring the courts or the legal profession into disrepute. Canon No. 11 provides: "Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

The evidence in this case is conclusive that the respondent received the proceeds of the insurance check of Vena Belle Israel, in trust, and, after paying certain amounts therefrom commingled such funds with funds of his own, in violation of Canon 11.

Rule 4 of our Rule on Disciplinary Procedure for Attorneys, defines misconduct as follows:

"Misconduct, as the term is used herein, means any one or more of the following:

"(a) violation of any provision of the oath of office taken upon admission to the practice of law in this State;

"(b) violation of any of the Canons of Professional Ethics as adopted by this Court from time to time;

"(c) commission of a crime involving moral turpitude;

"(d) conduct tending to pollute or obstruct the administration of justice or to bring the courts or the legal profession into disrepute."

In *Burns v. Clayton,* 237 S. C. 316, 117 S. E. (2d) 300, we said:

"* * * that the Board of Commissioners on Grievances and Discipline are officers of this court, commissioned and charged with the duty of investigating alleged misconduct on the part of their fellow members of the bar of this State and of reporting to this court the proceedings of their inquiry, and their findings and recommendations; that the Board's report is advisory only, this court being in nowise bound to accept its findings of fact or to concur in its recommendations; and upon this court alone rests the duty and the grave responsibility of adjudging, from the record, whether or not professional misconduct has been shown, and of taking appropriate disciplinary action thereabout."

We think that the evidence shows that the respondent is guilty of professional misconduct which brings the courts and the legal profession into disrepute, in the following particulars:

(1) The imprisonment of Vena Belle Israel was for the purpose of making her turn over the proceeds of the insurance check to the respondent.

(2) A portion of said funds, which was held in trust by the respondent, was commingled with his personal funds, in violation of Canon 11, of the Code of Ethics.

(3) The public policy of this State was violated by the respondent when he had Vena Belle Israel released from jail and the charges against her "settled" in consideration of her paying over to him the proceeds of the above-mentioned insurance check, such action constituting an unlawful compromise and abandonment of the prosecution against her for grand larceny, a felony.

The record here contains testimony as to the respondents' good character and professional ability. It also shows that the respondent has made complete restitution to Vena Belle Israel, the aggrieved party.

Some of the facts hereinabove set forth are undisputed, but as to others there are some rather sharp conflicts in the evidence. The members of the court are not in complete accord, in all respects, as to what the true and relevant facts in the case are, or as to whether all of such are fully and accurately portrayed hereinabove. All members of the court, however, share the view that the respondent is guilty of professional misconduct which tends to bring the courts and the legal profession into disrepute and that such conduct warrants disciplinary action. There remains the question of what disciplinary action this court should take in the exercise of its discretion.

There being differing views as to the facts of the case, there is not unanimity of opinion among us as to what disciplinary action is here appropriate. The views of the individual members, as to appropriate action, range from public reprimand to disbarment. A majority, however, has concluded that the respondent should be indefinitely suspended from the practice of law in this State as provided in Section 5(b) of the Rule on Disciplinary Procedure.

It is, therefore, ordered that the respondent be, and he is hereby, indefinitely suspended from the practice of law in this State and he shall forthwith surrender to the Clerk of this Court the certificate heretofore issued by this Court admitting him to practice.

Let this order be published with the opinions of this Court.