0255

Willis SAMUEL, Respondent, v. William David MOUZON and Eugene Fulton, Defendants of whom William David Mouzon is the Appellant. Appeal of William David MOUZON.

(320 S. E. (2d) 482)

Court of Appeals

*Wm. Reynolds Williams* of *Wilcox, Hardee, McLeod, Buyck & Baker,* Florence, *for appellant.*

*W. E. Jenkinson, III* of *Jenkinson & Jenkinson,* Kingstree, *for respondent.*

Heard June 27, 1984.

Decided Sept. 10, 1984.

SANDERS, Chief Judge:

Respondent Willis Samuel sustained certain personal injuries as a passenger of a vehicle involved in a head-on collision with another vehicle driven by appellant William David Mouzon. Samuel was awarded a jury verdict in his action for damages based upon Mouzon's alleged negligence, and Mouzon appeals. We affirm.

On the day of the collision, Samuel and three other passengers were returning from Kingstree, South Carolina, in a Ford van being driven by Eugene Fulton. Mouzon was driving a Ford Maverick in the opposite direction, toward Kingstree. Samuel testified that as the van rounded a curve it collided with the Maverick which was in its lane of travel. He also testified the van was going 40-45 m.p.h. in its proper lane at the time, to the right of the center line, and Fulton had no time to avoid the accident. Samuel further testified the lights of the Maverick did not flash or dim prior to the collision. Mouzon testified he had been on the highway for several miles and was driving 50-55 m.p.h. when he encountered the van in his lane. He said that in an effort to avoid the collision he sounded his horn, flashed his lights and drove onto the right shoulder, so that only his left two tires remained on the highway.

A highway patrolman testified he arrived at the scene after the collision and found debris from it in the center of Mouzon's lane. In addition, he testified he found one continuous skid mark near the edge of the pavement in Mouzon's lane. According to his testimony, this mark eventually left the highway and extended onto the shoulder. He also testified he had a conversation with Fulton at the hospital after the accident in which Fulton told him about a tire on the van blowing out, and in fact, one of its tires was blown out.

Fulton testified, essentially confirming the testimony of Samuel. He testified further that Mouzon had turned onto the highway from a side road just prior to the collision, without first stopping, and the van did not leave its proper lane until after the collision. He also testified new tires had been put on the van two months before the collision and said he did not

recall seeing or talking to the patrolman at the hospital.

The owner of the van testified, confirming Fulton's testimony about the van's having new tires. He further testified he saw both Fulton and the patrolman at the hospital, but said Fulton was "in bad shape" and "wasn't able to talk." He said he asked the patrolman to leave Fulton alone because "he wasn't in no shape to talk to him." In addition, the owner testified he returned to the scene of the collision early the next morning and found antifreeze from the van in the center of Fulton's lane. He went on to testify that the van's radiator had burst and its left front bumper was pushed into the left front tire.

One of the three other passengers in the van also testified Mouzon was traveling in the wrong lane and the tire on the van did not blow out prior to the collision. He confirmed Samuel's testimony concerning the speed of the van and the fact that Mouzon did not dim his lights.

The jury returned a verdict for Samuel for actual and punitive damages.

In an action at law tried by a jury, a reversal of the jury's verdict can only result when the only reasonable inference from the evidence is contrary to the factual findings implicit in the verdict. *Willis v. Floyd Bruce Co., Inc.,* 279 S. C. 458, 309 S. E. (2d) 295 (S. C. App. 1983). We are not at liberty to substitute our view of the evidence for the verdict of the jury. *Gurley, et al. v. United Services Automobile Association,* 279 S. C. 449, 309 S. E. (2d) 11 (S. C. App. 1983). Of course, it is also our duty to correct any error of law. *South Carolina Law Enforcement Division v. The "Michael and Lance,"* 315 S. E. (2d) 171 (S. C. App. 1984). We first address a question of law raised by Mouzon.

I

Mouzon first argues the trial judge erred in excluding the proffered testimony of the highway patrolman which would have shown Fulton was charged with driving left of center and forfeited bond on that charge. This testimony was proffered prior to and in anticipation of the trial judge's ruling it inadmissible. Although no ground for admissibility was asserted at trial, Mouzon now argues the testimony is admissible as an admission of a party opponent and for impeachment purposes.

It is well settled that while a criminal conviction is not a binding adjudication of a subsequent civil action based on the same facts, a judgment on a plea of guilty may be received into evidence as an admission, subject to explanation or rebuttal. *Green v. Boney,* 233 S. C. 49, 103 S. E. (2d) 732 (1958); *Globe & Rutgers Fire Ins. Co. v. Foil,* 189 S. C. 91, 200 S. E. 97 (1938). Mouzon argues this rule as to the admissibility of a guilty plea should be applied to bond forfeitures. He bases his argument in part on section 56-9-20 of the 1976 Code of Laws of South Carolina which defines both guilty pleas and bond forfeitures as "convictions." He also argues a bond forfeiture should constitute an admission as "silence in reply to an accusation." We reject these arguments for several reasons.

In our opinion, a guilty plea and a bond forfeiture are not analagous for this purpose. A forfeiture by its very nature differs from a guilty plea because it involves the failure of a person to act rather than an affirmative act admitting wrong doing. It may also result from any of a variety of reasons, other than the intention to either make an admission or imply one by "silence," e.g., the cost of defense as well as the indirect economic loss and inconvenience of a court appearance as compared with the consequence of a forfeiture.

We are of the further opinion that section 56-9-20 is inapplicable here. This section by its terms limits the definitions provided to Chapter 9 of Title 56 of the Code (the "Financial Responsibility Act"). Chapter 5 of Title 56 ("Traffic Regulations") contains a similar section providing that a guilty plea and a bond forfeiture "shall have the same effect as a conviction after trial under the provisions of such traffic laws." S.C. Code Ann. § 56-5-6220 (Supp. 1983). However, Chapter 5 also contains a section further providing:

> No evidence of conviction of any person for any violation of this chapter shall be admissible in any court in any civil trial.

S. C. Code Ann. § 56-5-6160(1976).[1]

---

[1] *But see Addyman v. Specialties of Greenville, Inc.,* 273 S. C. 342, 257 S. E. (2d) 149 (1979) (holding this section does not bar the use of a guilty plea to violation of a traffic regulation as a prior inconsistent statement for the purpose of impeaching credibility).

In addition, both section 56-9-20 and section 56-5-6220 equate as "convictions" not only guilty pleas and bond forfeitures but *nolo contendere* pleas as well. Our Supreme Court has recognized that a *nolo contendere* plea is different from a guilty plea in that "a plea of *nolo* cannot be used as an admission against a defendant in civil litigation." *Kibler v. State*, 267 S. C. 250, 227 S. E. (2d) 199 (1976). *See also In re Anderson*, 255 S. C. 56, 177 S. E. (2d) 130 (1970) (plea of *nolo contendere* is not an admission of guilt except in case in which it is entered).

Mouzon also argues on this point that even if the bond of forfeiture is not admissible as substantive evidence, it should have been received into evidence as conduct amounting to a prior inconsistent statement by Fulton impeaching his testimony "that he was driving in his own lane of travel." We also reject this argument. As previously discussed, there are many different reasons for a person to forfeit bond. In our opinion, the failure of a defendant to appear in court and thereby forfeit bond does not amount to conduct inconsistent with his later testimony that he was not guilty of the offense with which he was charged. *See Hannah v. Ike Topper Structural Steel Co.*, 120 Ohio App. 44, 201 N. E. (2d) 63 (1963) (a traffic ticket and attached form authorizing entry of guilty plea, waiver of trial and payment of fine cannot be used in a subsequent automobile collision case as proof of conviction or prior inconsistent statement for impeachment).

We therefore hold that the fact that a person has forfeited bond cannot be received into evidence either as an admission or for impeachment purposes in a subsequent civil case.[2]

## II

Mouzon next argues that trial judge erred in denying his motion to strike certain allegations of negligence from the complaint based on a lack of evidence. The

---

[2] We do mean to suggest that a conviction of a crime involving moral turpitude after a bond forfeiture could not be used for impeachment purposes in a subsequent proceeding. *Cf. State v. Lynn*, 277 S. C. 222, 284 S. E. (2d) 786 (1981) (defendant had pleaded *nolo contendere* to criminal sexual assault and State was allowed to use *nolo* plea to impeach his testimony in subsequent proceeding).

allegations at issue are that Mouzon (1) failed to dim his lights, (2) failed to maintain a proper lookout, (3) failed to brake his vehicle, swerve or take any action to avoid the accident, and (4) drove at an excessive rate of speed.

While the testimony presented by Samuel and Mouzon was in conflict on all of these allegations, the record reveals evidence from which the jury could have found Mouzon was negligent as to each. There was explicit testimony that Mouzon did not dim his lights. Although testimony was presented indicating Mouzon saw the van and attempted to take some form of evasive action immediately prior to colliding with it, what he did was obviously not sufficient to avoid the collision. As to the allegation of excessive speed, Mouzon admitted to driving at or near the maximum South Carolina speed limit. A finding that this speed was excessive under the circumstances can be inferred from testimony that his speed was such as to prevent Mouzon's being able to avoid the collision by controlling his vehicle so as to stay in his own lane while rounding a curve.

We therefore hold the trial judge was correct in ruling there was sufficient evidence for the jury to consider these allegations of negligence.

### III

Finally, Mouzon argues there is no evidence of recklessness, wilfulness or wantonness to support the award of punitive damages. Causative violation of an applicable statute by a motorist is evidence of recklessness, wilfulness and wantonness. *Johnson v. Parker*, 279 S. C. 132, 303 S. E. (2d) 95 (1983). Here, testimony was presented as to Mouzon's crossing the center line of the highway. Such conduct would at least be a violation of section 56-5-1810, as amended, which requires vehicles be driven on the right half of the road. This testimony alone is sufficient to support the award of punitive damages. The jury apparently chose to accept this testimony over that of the highway patrol concerning the location of debris at the scene of the accident which tended to support Mouzon's version of how the collision occurred. *See Doe v. Asbury*, 314 S. E. (2d) 849 (S. C. App. 1984) (sustained jury verdict which implicitly disregarded testimony of a policeman as to debris and tire marks).

Accordingly, the judgement is

Affirmed.

GARDNER and GOOLSBY, JJ., concur.

## ADDENDUM

While not altogether necessary to the result we reach here, the following chart may be of some benefit to the trial bench and bar in synthesizing the cases cited in part I of this opinion:

|  | Admissible as an Admission | Admissible as Prior Inconsistent Statement for Impeachment |
|---|---|---|
| Guilty Plea | *Green* and *Globe* *say YES* | *Addyman* says YES |
| Nolo Contendere Plea | *Kibler* and *Anderson* say No | UNDECIDED * |
| Bond Forfeiture | *Samuel* says NO | *Samuel* says NO |

*\*Lynn* allowed the admission of a *nolo* plea for impeachment. However, in that case it appears to impeach credibility by showing the bad character of witness, not as a prior inconsistent statement. The defendant was on trial for criminal sexual conduct. He had entered a *nolo* plea in a previous case to criminal sexual assault. Preliminary to deciding whether or not to take the stand as a witness in his own defense, he requested a ruling by the court as to whether, if he did so, his prior plea could be used to impeach his testimony. It did not appear the facts of the previous case had anything to do with the case in which he was on trial. The trial court ruled his prior plea could be used to impeach his testimony if he took the stand. On appeal, the Supreme Court affirmed, holding that the *nolo* plea entered by the defendant in the previous case amounted to a conviction. Of course, it is well settled that a conviction for a crime of moral turpitude may be used to impeach the credibility of a witness by showing bad character, without regard to what plea was entered. *State v. LaBarge*, 275 S. C. 168, 268 S. E. (2d) 278 (1980).