James J. MURPHY and Cecilia J. Murphy; William C. Goold; Margaret Mayfield Price; Truman C. Bridges and Joan L. Bridges; Elizabeth H. Puckett; Donald W. Golden and Peggy M. Golden; Elsie R. Booth; Harold L. Moore and Frankie R. Moore; Larry Gene Forman and Rebecca Ann Forman, Appellants/Cross–Appellees,

v.

KENTUCKY UTILITIES COMPANY, Appellee/Cross–Appellant.

Nos. 89–CA–001385–MR, 89–CA–001434–MR.

Court of Appeals of Kentucky.

Jan. 25, 1991.

W. Earl Dean, Lee M. Dean, Harrodsburg, and Robert C. Fields, Frankfort, for appellants, cross-appellees.

Stephen F. Schuster, Louisville, and David Patrick and W.A. Wickliffe, Harrodsburg, for appellee, cross-appellant.

Before CLAYTON, MILLER, and STUMBO, JJ.

## OPINION AND ORDER

STUMBO, Judge:

James J. Murphy and other Mercer County landowners appeal from a judgment of the Mercer Circuit Court finding that Kentucky Utilities Company was not liable for damages suffered by the landowners during a flood of the Kentucky River in 1978. Kentucky Utilities Company also appeals from the judgment, asserting that its motions for a directed verdict on liability should have been granted. For the reasons set forth herein, we affirm the judgment and order that the cross-appeal herein be dismissed.

During the period from 1923 to 1925, Kentucky Utilities Company (hereinafter "KU") constructed Dix Dam across the Dix River at a point approximately three miles upstream from the confluence of the Dix River and the Kentucky River. From the time of its construction, the dam has undergone two modifications. The latter modification consisted of installing a solid concrete wall (called an "ogee" section) across one-half of the channel. The wall was approximately 8½ feet high, with a 1½ foot collapsible "flashboard" on top of the wall. This allowed KU to collect an additional 10 feet of water for power production purposes. The other half of the channel consisted of 10 steel flood gates. Each gate is approximately 10 feet high and 35 feet wide, and can be operated individually.

Unusually heavy rains in early December of 1978 caused Herrington Lake, the water contained behind the dam, to reach the level of the gates at approximately 3:00 a.m. on Friday, December 8. The lake continued to rise throughout the day until it was approximately 6 to 8 feet high on the gates at around noon. KU then began opening the 10 gates. The gates were completely opened by 2:30 p.m. on the 8th; however, the lake continued to rise for the next 20½ hours until it reached its peak elevation of 761.2 mean sea level (hereinafter "m.s.l.") at 6:00 a.m. on Saturday, December 9. The spillway gates begin at 750 m.s.l., and the maximum height of the dam is 760 m.s.l.

The flood caused by these rains was one of the largest in recent history. A number of properties located along the Kentucky River were flooded. The underlying facts in this case are similar to those of other cases already decided or pending, the only difference being the county the landowners reside in and their distance from the dam. The Mercer County landowners in this case live approximately 7 miles from Dix Dam. Expert testimony at trial indicated that water passing through the dam would take about 1½ hours to reach the landowners' property. The landowners claim that between 2:00 p.m. and 4:00 p.m. on the afternoon of December 8, the Kentucky River rose faster than it ever had before, completely filling their basements and reaching the first floor of their homes. By Saturday morning, the water had risen to approximately 15 feet above normal, causing considerable damage to the landowners' homes.

The landowners claim that KU, by impounding the water and then releasing it at the time they did, worsened any flooding damage they might have suffered and should be strictly liable for all of their damages. KU argues that it should not be held liable because no negligence by its gate operator was shown and, no matter what its gate operator would have done, the landowners would still have been flooded. As evidence of this, KU points out that the level of the Herrington Lake continued to rise even after the gates were opened and eventually rose above the level of the dam. Thus, KU argues that, by use of computer simulations performed by their experts, the most any different operation of the gates might have alleviated the flooding damage suffered by the landowners would have been approximately 2 inches. This testimony was not rebutted by the landowners' expert. KU's motions for a directed verdict, made at the close of the landowners' evidence and at the end of their evidence, were denied. The jury found that KU did not substantially contribute to and was not liable for the dam-

age suffered by the landowners. The interrogatory answered by the jury reads as follows:

*Interrogatory 1*: Do you believe from the evidence that Kentucky Utilities released water from its Dix Dam facility during the flood about which you have heard the evidence in such a fashion as substantially worsened flooding conditions in the Kentucky River, as it coursed through Mercer County and specifically the Palisades Area of Mercer County beyond that which would have occurred regardless of any action on its part?

Yes___ No X

The landowners claim that the trial court erred in not giving the following tendered instruction:

INSTRUCTION NO. __

Any corporation constructing or maintaining a hydroelectric dam shall be liable for any damages resulting from overflowing any property, public or private. The Jury is instructed to answer the following:

### INTERROGATORY

1. Do you believe from the evidence that the overflow by defendant, Kentucky Utilities Company was a substantial factor in causing or contributing to cause the flooding of properties of the plaintiffs in the 1978 flood?

YES __
NO __

■■■ The landowners claim that *Winchester Water Works Co. v. Holliday*, 241 Ky. 762, 45 S.W.2d 9 (1931), stands for the proposition that KU should be strictly liable in this case. We disagree with the landowners that this was a strict liability case; instead, we find it to be more in the nature of a trespass case. *Winchester* stands for the proposition that when a water company intentionally releases impounded water and lower landowners are damaged thereby, negligence need not be shown on the part of the water company

for those injured landowners to recover. But, as stated in *Winchester*, "[t]he water company is not an insurer for the safety of its dam, but is required to use ordinary care in its maintenance." *Winchester, supra*, 45 S.W.2d at 11. Thus, strict liability is not an applicable theory for this case and the trial court properly refused giving this instruction. Since KU intentionally released the water it had impounded, the landowners only had to prove that a loss was imposed upon them by this intentional act. The instructions given by the court adequately reflect this requirement and, in the absence of other tendered instructions by the landowners, we find no error in giving them. We make no comment as to the general instructions and the second interrogatory, since these were not reached by the jury in its deliberations.

■■■ KU cross-appeals from the judgment and claims that its motions for a directed verdict should have been granted. Since KU prevailed below and cannot be considered an aggrieved party as regards the judgment, we dismiss KU's appeal. This Court will not render advisory opinions for use in other pending litigation.[1]

■■■ Finally, we note that KU has cited to us two prior unpublished opinions from this Court and has asked us to consider them in this case. KU argues that these two opinions, given by this Court during the litigation by the Franklin County landowners, fall within the exception of *Penco, Inc. v. Detrex Chemical Industries, Inc.*, Ky.App., 672 S.W.2d 948 (1984), to the prohibition against citing unpublished opinions of CR 76.28(4)(c). The clear language of the rule states that "[o]pinions that are not to be published shall not be cited or used as authority in any *other* case in any court in this state." (Emphasis added.) Since this case clearly does not involve the same parties as the prior one, nor is the underlying fact situation the same due to the difference in location from the dam and other geographic factors, we do not think the *Penco* exception is applicable to this fact

---

**1.** We have been advised that other cases are currently pending in two other circuits arising from the 1978 flood.

situation. Accordingly, we have not considered these prior opinions for purposes of the present one.

Therefore, Appeal No. 89–CA–001385–MR is affirmed.

Having affirmed Appeal No. 89–CA–001385–MR, Kentucky Utilities' Appeal No. 89–CA–001434–MR is hereby ORDERED DISMISSED as MOOT.

All concur.